```
1  James Butman
   Bar No. 8008
2  LAW OFFICES OF BARRY LEVINSON
   2810 S. Rainbow
3  Las Vegas, NV 89146

4  Robert A. Nersesian
   Bar No.: 2762
5  NERSESIAN & SANKIEWICZ
   528 South Eighth
6  Las Vegas, Nevada 89101
   (702) 385-5454; (702) 385-7667 (FAX)
7  Attorneys for Plaintiff
```

United States District Court

District of Nevada

| | |
|---|---|
| David L. Lockhart, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 07-CV-1032 JCM |
| Venetian Casino Resort, LLC, | ) |
| Kenneth Adler, Scott Irwin, | ) |
| Anders Tystad, and Daniel Smades, | ) **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| | ) |
| Defendants | ) |

NOW COMES plaintiff, and for his complaint against the defendants, states as follows:

**JURISDICTIONAL AND COMMON ALLEGATIONS**

1. Plaintiff is a natural person who is a resident of the State of New York.

2. Defendant, Venetian Casino Resort, LLC, is a Nevada corporation doing business in Clark County, Nevada, and is involved in the ownership and operation of the business commonly known as The Venetian.

3. That Defendant Kenneth Adler, at all times relevant to this action, was an employee of Defendant, The Venetian, operating within the course and scope of his employment.

4. That Defendant Scott Irwin, at all times relevant to this action, was an employee of Defendant, The Venetian, operating within the course and scope of his employment.

5. That Defendant Anders Tystad, at all times relevant to this action, was an employee of Defendant, The Venetian, operating within the course and scope of his employment.

6. That Defendant Daniel Smades, at all times relevant to this action, was an employee of Defendant, The Venetian, operating within the course and scope of his employment.

7. On October 30, 2004, plaintiff was a guest at a hotel owned and operated by Defendant Venetian Casino Resort, LLC (hereinafter "The Venetian,") located in Las Vegas, Nevada

8. Plaintiff's guest status extended to holding a room that was paid for in full, as a registered guest from October 28, 2004 to November 1, 2008.

9. On October 28, 204, plaintiff arrived at defendant's hotel, registered and was assigned room no. 27-222.  Plaintiff's room was prepaid for five nights.

10. On October 30, 2004, at approximately 2:00 am, Plaintiff was a passenger in a Ford Expedition SUV that defendants alleged was involved in a moving violation while on the property of The Venetian.

11. At no time did Plaintiff operate, or cause to operate, the aforementioned SUV.

12. Plaintiff did not know the operator of the vehicle nor any of the other passengers, but made their acquaintance at a local restaurant a short time before the subject incident occurred.  The operator of the SUV offered to drive plaintiff to his hotel, which offer the plaintiff accepted.

13. Upon arriving at the Venetian, when plaintiff exited the SUV he was immediately surrounded by security guards who detained him and accused him of being involved in a "hit and run."

14. That plaintiff, as a registered guest of the hotel, demanded an explanation whereupon Defendant Kenneth Adler told him, "You just committed a hit and run; shut the fuck up or I will have your ass thrown out of here!"

15. Plaintiff then demanded to speak with the hotel manager at which time plaintiff was brought inside The Venetian.

16. That after Defendants Kenneth Adler, Tystad, and Adler conferred behind the front desk outside of hearing of plaintiff, they told plaintiff, "I want you out!" Plaintiff was not allowed to respond.

17. Plaintiff did not appear threatening in any manner, was not rude or even confrontational, and merely wished to exercise his right to know why, that as a registered as a guest, he was now being told to leave.

18. At approximately 3:00 am, plaintiff was then escorted to his room and ordered to collect all of his belongings and to leave the hotel.

19. Plaintiff told security that he had committed no criminal acts, that his room was fully paid for and that he had a right to occupy the premises just as any other guest of The Venetian.

20. Plaintiff expressed a desire to speak with counsel and also told security that he had consumed alcohol rendering his operation of a motor vehicle unsafe and illegal.

21. Plaintiff further explained that the defendants were putting him out of the Venetian in the middle of the night and requiring him to remove his transportation illegally and abandoning him onto the streets of Las Vegas, and again requested that he not be so unjustly treated and put out of his paid for room. Plaintiff was then handcuffed by Defendant Adler and prevented from voluntarily leaving even if he attempted to do so because of being handcuffed and detained.

22. At approximately 3:30 am, after being handcuffed, arrested, plaintiff was transferred to the custody of the Las Vegas Metropolitan Police, taken to the Clark County Detention Center where he was incarcerated for 22 hours before posting bond.

23. On October 31, 2004 at approximately 9:00 am, plaintiff returned to The Venetian, accompanied by a Metropolitan police officer, to pick up his belongings.

24. Plaintiff's belongings, that had been previously placed in his assigned room, had been searched and thrown into garbage bags and stored in a basement beneath the hotel.

25. At approximately 9:30 am, Plaintiff, escorted by two Venetian security guards, retrieved his rented Ford Mustang convertible and left the premises.

### FIRST CLAIM—FALSE IMPRISONMENT

26. Plaintiff incorporates ¶¶ 1-26 as though fully repeated herein.

27. The Venetian and The Venetian's personnel's detention of plaintiff was without legal authority.

28. The Venetian and The Venetian's personnel had no probable cause to detain the plaintiff.

29. The Venetian and The Venetian's personnel acted with oppression, fraud and malice in the detention of the plaintiff.

30. On information and belief, the actions of the defendants were sanctioned, directed, and/or ratified by management personnel at very high levels within the Venetian.

31. Plaintiff suffered emotional distress and physical discomfort as a result of his detention.

32. The actions of The Venetian's constitute tortuous false imprisonment.

### SECOND CLAIM—ASSAULT

33. Plaintiff incorporates ¶¶ 1-32 as though fully repeated herein.

34. When The Venetian's personnel pulled out handcuffs, plaintiff was placed in fear of immediate harmful and offensive physical contact.

35. The actions of The Venetian and The Venetian's personnel were undertaken with malice and oppression.

36. Plaintiff suffered emotional distress as a result of The Venetian's actions.

37. The actions of The Venetian and The Venetian's and its personnel constitute tortuous assault.

### THIRD CLAIM—BATTERY

38. Plaintiff incorporates ¶¶ 1-37 as though fully repeated herein.

39. When The Venetian's personnel handcuffed plaintiff, plaintiff suffered a harmful and offensive physical contact that required subsequent medical attention.

40. The actions of The Venetian and The Venetian's personnel were undertaken with malice and oppression.

41. Plaintiff suffered emotional distress and physical discomfort and injury as a result of The Venetian's actions.

42. The actions of The Venetian and The Venetian's personnel constitute tortuous battery.

### FOURTH CLAIM—DEFAMATION

43. Plaintiff incorporates ¶¶ 1-42 as though fully repeated herein.

44. Plaintiff was placed in handcuffs in the presence of numerous customers of The Venetian.

45. Plaintiff was then marched to the security office against his will while in handcuffs and within the view of numerous persons not in the employ of defendants.

46. The Venetian and The Venetian's personnel published to all who saw the plaintiff being marched through The Venetian that the plaintiff was a criminal.

47. Plaintiff is not, and was not at the time, a criminal.

48. The Venetian and The Venetian's personnel undertook the handcuffing and escort of the plaintiff while in handcuffs with fraud, oppression and malice. The later escort of the plaintiff to jail from The Venetian was to like effect as well.

49. Plaintiff has been injured in his reputation, and has also suffered emotional distress as a result of these actions by The Venetian and The Venetian's personnel.

50. The actions of The Venetian and The Venetian's personnel constitute tortuous defamation, and defamation *per se*, and were undertaken with malice and oppression.

## FIFTH CLAIM—FALSE ARREST

51. Plaintiff incorporates ¶¶ 1-51 as though fully repeated herein.

52. The actions of The Venetian and The Venetian's personnel caused the local police to take plaintiff into custody while conducting a citizen's arrest as requested by The Venetian and The Venetian's personnel

53. The citizen's arrest of the plaintiff was on false allegations and without probable cause.

54. The Venetian and The Venetian's personnel knew that the allegations were false and could not be supported at law, and knew that there was no probable cause for an arrest. The Venetian and The Venetian's personnel also knew that no citizen's arrest could be made on the true set of facts.

55. The Venetian and The Venetian's personnel caused the arrest of the plaintiff with oppression, fraud and malice.

56. Plaintiff suffered emotional distress and physical discomfort as a result of the actions of The Venetian and The Venetian's personnel.

## SIXTH CLAIM—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiff repeats and realleges paragraphs 1-56 as though fully restated.

58. That the acts and omissions of The Venetian and The Venetian's personnel, and each of them, were intentional, malicious and oppressive, and calculated to cause Plaintiff fear and emotional distress. Further, the actions were extreme and outrageous in the detention, handcuffing, and arrest.

59. As the proximate result of the aforementioned acts, Plaintiff did suffer humiliation, mental anguish, and emotional distress, and has been injured in mind in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF—PREMISES LIABILITY

60. Plaintiff repeats and realleges paragraphs 1-60 as though fully restated.

61. The Venetian held a duty owed to plaintiff as a business invitee to keep their premises in a condition of reasonable safety for patrons.

62. Plaintiff was a patron at all relevant times herein.

63. The Venetian failed to keep their premises safe in that they failed to appropriately train their security personnel, allowed and ratified imprisonment of patrons and assault of patrons upon their premises, and otherwise failed to take actions necessary for the safety and security of their business invitees.

64. As a result of The Venetian's breach of its duty to keep its premises safe, Plaintiff has been damaged as set forth above.

## EIGHTH CLAIM FOR RELIEF—BREACH OF CONTRACT

65. Plaintiff repeats and realleges paragraphs 1-64 as though fully restated.

66. Plaintiff's guest relation with The Venetian was established at common law as well as contract.

67. Plaintiff was contractually entitled to complete his stay at The Venetian per the agreed terms.

68. Plaintiff was evicted from his room without cause.

69. Plaintiff's eviction constitutes breach of contract.

70. Plaintiff has been damaged in the amount of the lost value of services and lodging due him from The Venetian.

### NINETH CLAIM—TORTIOUS BAD FAITH BREACH

71. Plaintiff repeats and realleges paragraphs 1-70, as though fully restated.

72. As an innkeeper and guest a special relationship existed between plaintiff and The Venetian.

73. Under this special relationship, The Venetian owed plaintiff duties and responsibilities akin to those of a fiduciary duty.

74. The breaches set forth above were in violation of this duty, and also undertaken with oppression and fraud.

75. Plaintiff has been damaged as set forth above, and is also entitled to punitive damages under this claim.

### TENTH CLAIM—BREACH OF INNKEEPER'S DUTY

76. Plaintiff repeats and realleges paragraphs 1-75, as though fully restated.

77. Plaintiff was put out of his room in the middle of his stay.

78. Defendants have a duty to provide rooming once it consents to a person being a guest.

79. The duty of an innkeeper is independent of the duties of contract.

80. Defendants utilized oppression, fraud and malice in wrongfully ousting plaintiff from his room.

81. Plaintiff has been damaged as set forth above, and in addition is entitled to punitive damages.

### ELEVENTH CLAIM—CONVERSION

82. Plaintiff repeats and realleges paragraphs 1-81 above as though fully restated.

83. Plaintiff was the invitee of The Venetian, and booked his room in response to advertisements directed towards him.

84. In breach of the room agreement, Plaintiff was thrown out of defendants' premises, and his hotel room was converted.  On information and belief, The Venetian then relet the plaintiff's room to persons other than the plaintiff for part of the duration of plaintiff's entitled stay.

85. Plaintiff suffered the expense of moving, the inconvenience and indignity engendered thereby, and loss of the entire value of his room which had been delivered, then retaken, by defendants.

86. Plaintiff has been injured as set forth above.

87. Defendant's actions were undertaken with oppression, fraud and malice.

### TWELFTH CAUSE OF ACTION— VIOLATION OF 42 USC 1983

88. Plaintiff incorporates ¶¶ 1-87 above as though fully restated herein word for word.

89. Casinos, including defendant, have a pattern and practice of fabricating charges against patrons after committing false imprisonment and battery of a patron.

90. This pattern and practice is participated in by the police in Southern Nevada.

91. The police, in working with the casinos, will avoid investigation of the events leading up to the detention of the patron, or participate with the casinos in creating an arrest on known false statements and rubber stamp the casinos and write a citation, arrest the patron, or finalize a citizen's arrest for the casino that they know is not supported by probable cause in order to provide cover for the casino.

92. This pattern and practice is evidenced, in part, by the corollary cases of 1) State v. Russo, 2) State v. Grosjean, 3) City of Las Vegas v. Cagno, 4) State v. Dougherty, 5) State v. Miura, 6) City of Las Vegas v. Burris, 7) State v. Noble, 8) State v. Frabotta, 9) State v. Archuleta, 10) State v. Zhu, and 11) State v. Teems.

93. In each of the above referenced cases the defendant was first detained by the casino without legal authority and upon summoning the police the defendant was arrested or charged with criminal activity based on falsified charges proffered by the casino or casino personnel.

94. These charges were, respectively:  1) Not prosecuted following an arrest even though the police sought to continue prosecution despite an admitted lack of evidence, 2) Same, 3) Dismissed on appeal for lack of probable cause supporting the initial arrest, 4) Dismissed in the midst of trial for lack of probable cause supporting the initial arrest, 5) Dismissed on motion for lack of probable cause supporting the initial arrest, 6) Dismissed on motion for lack of probable cause supporting the initial arrest, and 7) Not prosecuted following an arrest, 8) Acquittal with the judge chastising the police for citing the bruised and battered defendant while ignoring the injury free security in their investigation, and 9) Acquittal with the judge chastising the casino for charging battery when first contact was made by the casino security, 10) abandonment by the State, and 11) abandonment by the State.

95. The history of the police in Southern Nevada and casinos working together to bring about detentions and false prosecutions on crimes in order to extricate casinos from civil liability and provide cover for the illegal actions of the casino, coupled with the heavy regulation of the industry, constitutes state action.

96. In addition to the factors referenced above, the police maintain a data base of local security officers in the employ of the casino, and with the participation of the casinos, including the defendant in this case, treat the police and the security officers as State agents.  In fact, in the final instance referenced above the LVMPD officer on scene, Sgt. Shaloob, acknowledged that "law enforcement and security are the same" for purposes of

the arrest of the casino patrons.  Additionally, it is readily acknowledged by LVMPD personnel that they rely upon and view casino security as an important arm of the State's law enforcement operations.

97. The charges levied against plaintiff fell into the category referenced above, and were falsified charges under which the police rubber stamped false assertions of the casino personnel while necessarily recognizing that under clearly established law there was no probable cause to arrest the plaintiff.

98. In undertaking this concerted action the illegal detention of the plaintiff was validated.

99. The seizure of the plaintiff was unreasonable and illegal, and was undertaken at various points as a joint action between the defendants and the police.

100. As a result of the illegal seizure of the plaintiff, plaintiff was damaged as set forth above.

101. Defendants' seizure of the plaintiff and co-opting of the police in connection therewith were motivated by evil motive and evil intent, and also or when it involved reckless or callous indifference to the federally protected rights of the plaintiff.

102. As a result of the defendants' violation of 42 U.S.C. 1983, plaintiff has been further injured as aforesaid.

### THIRTEENTH CAUSE OF ACTION—RACIAL DISCRIMINATION IN ACCOMODATIONS

103. Plaintiff repeats and realleges paragraphs 1-102 above as though fully restated.

104. Plaintiff is African-American.

105. On information and belief, considering the nature of the lack of any wrongdoing and lack of any reasonable basis for suspicion, Plaintiff was profiled and singled out for his race.

106. Of four persons in the vehicle two were African American, and these were the only two persons taken into custody although all were similarly situated.

107. Defendant, Venetian, constitutes a place of public accommodation.

108. Defendants' actions violate Title 42 of the United States Code.

109. As a result of their violation of Title 42, Defendants are liable to Plaintiff for the injuries describe above, attorneys fees, and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this court enter its judgment for plaintiff and against defendants in an amount in excess of $10,000.00 as determined by the trier of fact, inclusive of punitive damages on those claims asserting oppression, fraud, malice or a federal claim on the part of the defendants, and together therewith award to plaintiff the interest, costs and attorney's fees incurred in bringing and prosecuting the within action.

### RESTATEMENT OF JURY DEMAND

Plaintiff herewith reststates and reasserts the jury demand previously made in this matter.

DATED this 19TH day of February, 2008.

          LAW OFFICES OF BARRY LEVINSON

          _____/S/_____
          James Butman
          Bar No. 8008
          2810 S. Rainbow
          Las Vegas, NV  89146
          Attorneys for Plaintiff

          NERSESIAN & SANKIEWICZ

          _____/S/_____
          Robert A. Nersesian, Esq.
          Nevada Bar No. 2762
          528 South 8TH Street, Suite A
          Las Vegas, Nevada 89101
          Attorneys for Plaintiff

**PROOF OF SERVICE**

The foregoing first amended complaint was served upon Mark B. Schellerup, attorney for defendants, and all others appearing for the defendants, through the CMECF program as in place in the District of Nevada, Southern Division.

                                                                          /S/
                                      Robert A. Nersesian, and employee of
                                      Nersesian & Sankiewicz